IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 14, 2006 Session

## GERALD E. JOHNSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2003-B-835        Steve R. Dozier, Judge**

---

**No. M2005-01225-CCA-R3-PC - Filed March 9, 2006**

---

Pursuant to a plea agreement, the Petitioner, Gerald E. Johnson, pled guilty to one count of possession with intent to sell or deliver under 0.5 grams of cocaine. The trial court sentenced the Petitioner to seven years as a Range II, multiple offender. The Petitioner filed a petition for post-conviction relief, which the post-conviction court dismissed after a hearing. The Petitioner appeals, contending that his trial counsel rendered ineffective assistance of counsel. After thoroughly reviewing the record and the applicable law, we conclude that there exists no reversible error. Accordingly, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Charles E. Walker, Nashville, Tennessee, for the Petitioner, Gerald E. Johnson.

Paul G. Summers, Attorney General and Reporter; C. Daniel Lins, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

The Petitioner was indicted for possession with the intent to sell or deliver twenty-six (26) grams or more of a substance containing cocaine. Pursuant to a plea agreement, the Petitioner pled guilty to possession with intent to sell or deliver under 0.5 grams of cocaine and was sentenced to seven years' imprisonment at thirty-five percent. Subsequently, the Petitioner timely filed a petition for post-conviction relief, and the post-conviction court appointed counsel for the Petitioner. After a hearing, the post-conviction court determined that the petition lacked merit and dismissed the petition. Although the petition and amended petition allege various grounds for post-conviction

relief, the Petitioner raises two issues on appeal. First, he contends that he was denied the effective assistance of counsel at a suppression hearing prior to this guilty plea, and, second, he contends that his guilty plea was not knowing and voluntary because his counsel was ineffective.

At the evidentiary hearing on the Petitioner's petition for post-conviction relief, the following evidence was presented: The Petitioner testified that he told his trial Counsel that he was subjected to an illegal search, and he felt that Counsel failed to adequately pursue this line of defense. He acknowledged that Counsel informed him that the police asserted that the Petitioner consented to the search. The Petitioner also agreed that Counsel filed a motion to suppress the evidence obtained during the search but that the trial court denied the motion to suppress. The Petitioner explained that he wanted Counsel to ask the officer the following hypothetical question: "[If the officer] was hauling marijuana or drugs across the county line. If he was pulled over, would he consent for his car to be searched [?]" The Petitioner testified that Counsel did not ask that question and that decision negatively affected the outcome of his case. He testified that, at the preliminary hearing, this hypothetical question was asked, and the case was dismissed.

The Petitioner testified that Counsel told him that the District Attorney was offering a plea bargain for ten years at thirty percent, and he asked Counsel to negotiate a plea for seven years at thirty percent. He further testified that Counsel told him that the District Attorney would accept the Petitioner's plea for seven years at thirty percent. The Petitioner acknowledged that he would have been satisfied with a plea for seven years at thirty percent. He testified that he never saw the full plea agreement, and he only saw the second page of the document where he signed his name. He explained that he did not object when he heard his sentence would be served at thirty-five percent instead of thirty percent because the trial court judge was still talking as the Petitioner was walking out of the courtroom. The Petitioner testified that, as he was leaving the court room, he refused to shake Counsel's hand and expressed dissatisfaction with the plea agreement.

On cross-examination, the Petitioner admitted that he had previously been convicted of about eight felonies, and he realized that, had he taken his case to trial, his sentence could have been longer than seven years to be served at thirty-five percent. The Petitioner initially denied that, when he plead guilty, he realized that he gave up his opportunity to appeal the ruling on the motion to suppress. Upon further questioning, the Petitioner acknowledged that he relinquished his right to appeal the motion to suppress after he entered his plea. The Petitioner read the portion of his plea agreement that was on the same page that he had signed. The terms of the agreement stated that the Petitioner was pleading to "Possession With Intent to Sell or Deliver Under 0.5 Grams of cocaine, seven (7) years, Range II Multiple, consecutive to his previous parole." The Petitioner testified that he did not fully understand the meaning of pleading to different ranges.

Counsel testified that he defended the Petitioner and that he filed a motion to suppress that incorporated all the grounds for such a motion to which the Petitioner had alerted him or that he found in the Petitioner's file. He did not specifically recall the Petitioner urging him to ask the police officer if the police officer would have consented to a search had he been in the Petitioner's

position, but he noted that it was entirely possible that the Petitioner made such a request. He testified that asking the police officer what he would have done in the Petitioner's position invited the police officer to state that the police officer would never consider possessing, dealing, or transporting drugs. Counsel further testified that he did not think that this question was relevant to the Petitioner's case and did not address the legality of the search. He explained that the written plea petition in his file stated that the Petitioner pled to seven years as a Range II, multiple offender. Counsel described the methods that he employs to go over plea petitions with clients, stating:

> I have a standard practice that I vary from only on extremely rare occasions. And if so, I make note of it, which I did not do in this case. . . . I read the entire plea petition to the Defendant aloud, regardless of his educational level, inserting explanations of certain difficult concepts. . . . I do not have any independent recollection of explicitly reading this petition to [the Petitioner], but had there been some issue involved, I would have made note of it. I did not. [The Petitioner] appeared from my earlier contacts with him to be relatively insightful as to his case and to his circumstance.

He did not recall the Petitioner asking him any questions about whether his plea was at Range I or Range II. Counsel said that he would have immediately asked the Court for a recess to clarify the plea with the Petitioner if the Petitioner appeared to misunderstand the plea.

On cross-examination, Counsel testified that he probably never listened to a tape of the preliminary hearing and acknowledged that another attorney may have asked the police officer the hypothetical question about what the police officer would have done had the police officer been in the Petitioner's position. He acknowledged that it was possible that the Petitioner spoke to him about serving his sentence at thirty percent as opposed to thirty-five percent after the Petitioner entered his plea. He said that, if such a conversation occurred, he must not have considered the discussion to be important because he made no notations regarding such a conversation.

On appeal, the Petitioner claims that he was denied effective assistance of counsel because Counsel: (1) failed to ask a witness a specific question at the suppression hearing; and (2) allowed the Petitioner to enter a guilty plea that was neither voluntary nor knowing. The post-conviction court found that the Petitioner "failed to show that . . . counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that the deficient performance prejudiced his [case] by clear and convincing evidence."

**II. Analysis**

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the

-3-

factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact and, as such, is subject to de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. State v. White, 114 S.W.3d 469, 475 (Tenn. 2003); Burns, 6 S.W.3d at 461; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. The following two-prong test directs a court's evaluation of a claim for effectiveness:

"First, the [Petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the [Petitioner] by the Sixth Amendment. Second, the [Petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [Petitioner] of a fair trial, a trial whose result is reliable. Unless a [Petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

State v. Melson, 772 S.W.2d 417, 419 (Tenn. 1989) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Strickland, 466 U.S. at 668). When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988).

The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Finally, we note that criminal petitioners are not entitled to perfect representation,

only constitutionally adequate representation. <u>Denton v. State</u>, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987) (quoting <u>United States v. Cronic</u>, 466 U.S. 648, 665 n.38 (1984)).

Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. <u>Williams v. State</u>, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. <u>House</u>, 44 S.W.3d at 515; <u>Thomas Brandon Booker v. State</u>, No. W2003- 00961-CCA-R3-PC, 2004 WL 587644, at *4 (Tenn. Crim. App., at Jackson, Mar. 24, 2004), *perm. app. denied* (Tenn. June 21, 2004). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. <u>House</u>, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the <u>Strickland</u> test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694; <u>Nichols v. State</u>, 90 S.W.3d 576, 587 (Tenn. 2002). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. <u>Strickland</u>, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." <u>Id.</u> at 694; <u>see also</u> <u>Harris v. State</u>, 875 S.W.2d 662, 665 (Tenn. 1994).

In cases involving a guilty plea or a plea of nolo contendere, the petitioner must show prejudice by demonstrating that, but for counsel's errors, he would not have plead guilty but would have insisted upon going to trial. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); <u>Bankston v. State</u>, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991).

## A. Questioning the Consent to Search

The Petitioner contends that Counsel failed to properly pursue the issue of whether the Petitioner consented to the search of the Petitioner's car. He further alleges that, had Counsel asked a specific question at the suppression hearing, then the trial court would have found that the Petitioner did not consent to the search of his vehicle, and the evidence discovered inside would have been suppressed. The State counters that the Petitioner failed to demonstrate that Counsel's conduct fell below an objective standard of reasonableness by clear and convincing evidence. The post-conviction court found that Counsel's decision not to ask the hypothetical question at the suppression hearing was not deficient conduct and did not prejudice the Petitioner's case.

The evidence does not preponderate against the findings of the post-conviction court. The Petitioner offered no legal argument to support his claim that, had Counsel asked the hypothetical question at the suppression hearing, the trial court would have found that the Petitioner did not

consent to the search. The Petitioner failed to demonstrate that the hypothetical question was asked at the preliminary hearing and resulted in the dismissal of the warrant. The Petitioner also failed to show that, had Counsel asked the question at the suppression hearing, the trial court would have suppressed the evidence. Additionally, Counsel exercised sound judgment when refraining from posing this hypothetical question to the officer. Counsel had legitimate concerns about the question's relevance and the opportunity it would afford the officer to offer an answer that was prejudicial to the Petitioner's case. Counsel's concern for limiting the potential for a damaging response from the officer was clearly a tactical decision that is within the objective standard of reasonableness demanded of defense attorneys in criminal cases. For the foregoing reasons, the Petitioner is not entitled to relief on this issue.

### B. Petitioner's Plea Agreement

The Petitioner alleges that Counsel misinformed him about his plea agreement and that his plea was not knowingly and voluntarily made. The State counters that the Petitioner has failed to show, by clear and convincing evidence, that Counsel failed to properly inform him about his plea agreement or that Counsel's conduct regarding the plea negotiations fell below an objective standard of reasonableness. The post-conviction court accredited the testimony of Counsel and found that the Petitioner understood the terms of the plea agreement and entered a knowing and voluntary guilty plea.

When analyzing a guilty plea, we look to the Federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly our Tennessee Supreme Court has required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Id. The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Id. To determine if a plea is knowing, voluntary, and understanding, a court looks at the totality of the circumstances, considering factors:

> "[S]uch as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advise [sic] from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial."

Powers v. State, 942 S.W.2d 551, 556 (Tenn. Crim. App. 1996) (quoting Blankenship, 858 S.W.2d at 904).

The evidence does not preponderate against the findings of the post-conviction court that Counsel's conduct was not deficient and that the Petitioner's plea was knowing and voluntary. The post-conviction court accredited Counsel's testimony that described how he ensured that his clients understood all the ramifications and consequences of their plea bargains and explained that he had no recollections or notations that suggested that the Petitioner misunderstood his plea. This Court will not re-weigh the credibility findings of the post-conviction court. The post-conviction court found that any alleged misunderstanding that the Petitioner had about his plea could not be attributed to any deficient conduct on behalf of counsel.

The Petitioner argues that his plea was not knowing and voluntary because he did not receive the sentence that he bargained for with the State and that a plea agreement cannot exist "[a]bsent a meeting of the minds as to an agreement between the defendant and the State." State v. Carlos Montes Waters, No. E2001-00882-CCA-R3-CD, 2003 WL 824278, at *8 (Tenn. Crim. App., at Knoxville, Mar. 6, 2003), *perm. app. denied* (Tenn. July 21, 2003). In Waters, the defendant tried to accept the terms of a plea bargain that he had already rejected and then claimed that the State engaged in prosecutorial misconduct by adding a condition to the plea bargain. This Court held that, due to these circumstances, no plea bargain existed. Id. at *4. This Court did not discuss whether a defendant's plea was knowingly and voluntarily made in Waters. Therefore, Waters does not apply to the case at bar, and the Petitioner must show that his plea was not knowingly, voluntarily, or understandingly made under Blankenship and its progeny.

After a consideration of the Blankenship factors, this Court finds that the Petitioner's plea was knowing and voluntary. The Petitioner had a high degree of familiarity with criminal proceedings, as shown by his approximately eight prior felony convictions. As previously discussed, the record reflects that Counsel was fully competent and conferred with the Petitioner about the opportunities available to him. Furthermore, the Petitioner acknowledged that he wanted to plead guilty in order to avoid a greater penalty which he knew could result if he took his case to trial. These factors all reveal that the Petitioner's guilty plea was knowingly and voluntarily made. Therefore, the Petitioner is not entitled to relief on this issue.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE